The M. L. Improvement Corporation, Appellant, v. The State of New York, Respondent.

Third Department, March 15, 1923.

State — action to recover rent of building leased by Trustees of Public Buildings for State Industrial Commission — bill was presented to State Comptroller who refused to audit on ground of lack of jurisdiction but he did not reject claim — Court of Claims did not have jurisdiction under Court of Claims Act, § 12 — State Comptroller was proper officer to audit claim under State Finance Law, § 4 — remedy of claimant was by mandamus to compel State Comptroller to audit claim.

The Court of Claims has no jurisdiction under the Court of Claims Act, section 12, of a claim for the rent of a building accruing under a lease made by the Trustees of Public Buildings, where the claim was presented to the State Comptroller but he refused to pass on it on the ground that he had no jurisdiction in the matter, and that the claimant should file its claim with the Trustees of Public Buildings, for before the Court of Claims can acquire jurisdiction, it must be shown that such claim has been rejected by the Comptroller.

The State Comptroller was, under section 4 of the State Finance Law, the proper officer to audit claimant's claim, and the remedy of the claimant was by mandamus to compel him to act.

Hasbrouck, J., dissents, with opinion.

Appeal by the claimant, The M. L. Improvement Corporation, from an order of the Court of Claims, entered in the office of the clerk of said court on the 5th day of June, 1922, dismissing the claim, and also from a judgment of said court in favor of the defendant, entered in said clerk's office on the 15th day of June, 1922, pursuant to said order.

*Thomas & Houghton* [*Woolsey A. Shepard* of counsel], for the appellant.

*Charles D. Newton*, Attorney-General [*Edward Mone, Second Deputy Attorney-General*, and *Porter L. Merriman, Deputy Attorney-General*, of counsel], for the respondent.

**734** M. L. IMPROVEMENT CORPORATION *v.* STATE OF NEW YORK.

Third Department, March, 1923.          [Vol. 204

HINMAN, J.:

This claim is for damages for breach of a written contract of lease for a portion of premises owned by the claimant in New York city. In June, 1919, the Trustees of Public Buildings of the State entered into such lease with the claimant for a term of one year and seven months to commence on the 1st of July, 1919, and to terminate the 1st of February, 1921, at an annual rental of $16,500, payable in monthly installments of $1,375 on the first day of each and every month in advance.

The premises were leased by the Trustees of Public Buildings for the State Industrial Commission, which Commission entered said premises under the lease and occupied the same up to and including the 30th of April, 1920, for which period the rent was duly paid. On the 30th of April, 1920, the State Industrial Commission vacated said premises. For the balance of the period of the lease from that date the rent was not paid. It is stipulated that the claimant forwarded to the State Industrial Commission each month during the balance of the term of the lease, including the month of January, 1921, a bill for the rent due for that month in the usual form provided by the State Industrial Commission. The procedure for the collection of the rent was for the claimant to execute and verify such a voucher and on the receipt of a requisition from the State Industrial Commission with such a voucher a warrant was issued by the Comptroller. In March, 1920, the State Industrial Commissioner wrote to the claimant informing it that the State had made provision for the purchase of a building which would be in condition for occupancy by the 1st of May, 1920, and requesting the claimant to release the State from further obligations under the lease. This the claimant could not consent to and so notified the State Industrial Commissioner, whereupon said Commissioner notified claimant that the Commission intended to vacate the premises on April 30, 1920, which it did. The claimant made efforts to secure a new tenant for the balance of the period, which efforts were unavailing, and the premises remained vacant during the balance of the term. The claimant made no other effort to collect the rent than by the presentation of its monthly bills to the State Industrial Commissioner, until March 16, 1921, when a representative of the claimant personally appeared before the Comptroller and presented a claim for the full amount of the balance of the rent due. The Deputy Comptroller stated that the Comptroller had no jurisdiction in the matter and that the claimant should file its claim with the Trustees of Public Buildings; that it should see Mr. Parsons, the executive auditor, who represented the Trustees of Public

Buildings. The claim was not left with the Comptroller but on the 17th of March, 1921, was presented to the executive auditor. Such Trustees of Public Buildings having failed to authorize the allowance of said claim, this action was brought in the Court of Claims. No further effort was made to require the Comptroller to audit the same.

The Court of Claims has held that it has no jurisdiction of the claim by reason of the fact that the claim is founded upon express contract and that such claim was not rejected by the Comptroller, who was the officer to whom such a claim must be submitted for audit or determination. (Code Civ. Proc. § 264; Court of Claims Act, § 12; State Finance Law, § 4.) The Court of Claims also held that, assuming the absence of such a jurisdictional defect, the claim was largely barred by the six months' Statute of Limitations. (118 Misc. Rep. 605.)

The Code of Civil Procedure (§ 264; Court of Claims Act, § 12) provides as follows: " But the Court [of Claims] has no jurisdiction of a claim submitted by law to any other tribunal or officer for audit or determination except where the claim is founded upon express contract and such claim, or some part thereof, has been rejected by such tribunal or officer." This is one of the claims required to be audited by the Comptroller under the general provision of the State Finance Law (§ 4), since no other officer has been appointed by the Legislature to audit this specific claim or to order its payment as in the case of *Nellis* v. *State of New York* (204 App. Div. 176), decided by this court at the last term. That question was not expressly decided by this court in the latter case but it was passed upon by the Court of Claims as shown by the opinion of CORWIN, J. (*Nellis* v. *State of New York*, 118 Misc. Rep. 612). In that case it appeared that by chapter 340 of the Laws of 1921, not applicable to the case at bar, it was provided that " the sum hereby appropriated shall be paid out by the Treasurer on the warrant of the Comptroller on the order of the Industrial Commissioner." That statute was passed subsequent to the period of the lease in question here. The provision of that statute above quoted was interpreted as requiring an audit in the first instance by the Industrial Commissioner. Whether that was so or not, no such provision of the statute was applicable to the facts of this case and the general rule of audit set forth in section 4 of the State Finance Law, requiring an audit by the Comptroller, appears to be the only applicable statute.

It was the duty of the Comptroller to audit in this case and the Court of Claims had no jurisdiction of the claim unless the same had been rejected by the Comptroller. The Comptroller

**736** M. L. Improvement Corporation *v.* State of New York.

Third Department, March, 1923. [Vol. 204

did not actually reject the claim. " To audit is to hear, to examine an account, and in its broader sense it includes its adjustment or allowance, disallowance or rejection." (*People ex rel. McCabe* v. *Matthies*, 179 N. Y. 242, 247.)

The Comptroller did not reject the claim. He denied jurisdiction. He expressly refused to act as auditor. He refused to approve or disapprove. In this he was in error. If it was his duty to act and he refused to do so the remedy was to compel him to act by mandamus. The Comptroller was in error in thinking that there was a condition precedent to his acting which had not been complied with. His sole act was not an audit at all but a refusal to audit because the claim had not been passed upon by the Trustees of Public Buildings. There is nothing in the statute which required the Trustees of Public Buildings or the State Industrial Commissioner to order the payment of the claim as a condition precedent to auditing of the same by the Comptroller.

The claim being founded upon express contract and not having been rejected by the Comptroller, the Court of Claims had no jurisdiction and the claim was properly dismissed upon that ground. (*O' Neil* v. *State of New York*, 223 N. Y. 40, 43.) This leaves it unnecessary to consider the other question. It would seem from the testimony that appropriations were available at the time to meet the State's obligation under the terms of this lease. If so, the obligation of the State under the lease became absolute. (*Nellis* v. *State of New York, supra.*)

We do not assume to decide the question of the State's liability upon the merits. We simply hold that the claimant had misconceived its remedy, which was to compel the Comptroller, to entertain its application for audit by mandamus if necessary. The predicament of the claimant seems to rest upon the mistake of law that the Comptroller had no jurisdiction to audit, which was error.

Our decision is without prejudice to the right of the claimant to present its claim to the Comptroller for his audit and determination. While the appropriations have lapsed whereby moneys may have been available for the payment of these rents (N. Y. Const. art. 3, § 21), another appropriation may be made available to meet this claim, if upon the audit and determination of the Comptroller it is found to be a valid obligation of the State.

The judgment of the Court of Claims should be affirmed and the claim dismissed.

H. T. Kellogg, Acting P. J., Kiley and Van Kirk, JJ., concur; Hasbrouck, J., dissents, with an opinion.

Hasbrouck, J. (dissenting):

On or about June 21, 1919, the M. L. Improvement Corporation entered into a written agreement to lease the ninth floor of 411–413 Fifth avenue, New York city, to the State of New York for a term of nineteen months to end February 1, 1921, for the annual rent of $16,500 payable in equal monthly payments in advance of $1,375.

On April 6, 1920, the State Industrial Commission, the occupant of the leased premises, notified the landlord that it would vacate the premises on April thirtieth. In pursuance of such expressed intention on that day the State moved out of the above named building. The lease contained no covenant of defeasance. The claimant, however, made efforts to lease the property but without success.

There are but two questions necessary to be determined on this appeal.

1. Has the improvement corporation's claim or claims been submitted to the Comptroller for audit and has he rejected it or them? Section 264 of the Code of Civil Procedure provides with regard to rejection as follows: " But the Court [of Claims] has no jurisdiction of a claim submitted by law to any other tribunal or officer for audit or determination except where the claim is founded upon express contract and such claim, or some part thereof, has been rejected by such tribunal or officer." This provision is now in section 12 of the Court of Claims Act.

The claimant has presented verified bills to the Comptroller covering all of the rent unpaid, and again its bill to the Comptroller on the 16th day of March, 1921. Claimant's attorney called at the Comptroller's office, saw Mr. Kearney, Deputy Comptroller, told him he had come to Albany to see about the claimant's claim against the State; that it amounted to some $12,000; stated all the facts of his claim to Kearney and had his written claim at the interview. Mr. Kearney told him that " the Comptroller has no jurisdiction in the matter, that I should file my claim with the Trustees of Public Buildings."

In order to confer jurisdiction on the Court of Claims there are three essentials: *First*, an express contract. There can be no question but the contract of lease in writing meets the requirement of being express. *Second*, the claim on the express contract must be submitted for audit. The act of submission required is that only of the claimant. Whether he has submitted it for audit depends upon what he did. There is no dispute of the fact that he went to the Comptroller's office to submit the claim to him. Claimant's attorney had the claim with him and discussed the

47

**738** M. L. Improvement Corporation *v.* State of New York.

Third Department, March, 1923. [Vol. 204

amount thereof and the facts in relation thereto, and in that discussion the Deputy Comptroller said: " The Comptroller has no jurisdiction, that I should file my claim with the Trustees of Public Buildings." How can we escape the conclusion from what was done and the words of the Deputy Comptroller that there was in form and substance a submission of the claim to the Comptroller for audit. Mr. Justice Hinman, writing for the majority of the court, holds that though there was a submission there was no audit, and, therefore, no such rejection as the statute required. It is submitted that jurisdiction under the language of the Code of Civil Procedure and the Court of Claims Act, above quoted, does not hang upon an audit by the Comptroller. It hangs upon a submission for audit. It does not hang upon what the Comptroller did in that respect. ·It hangs upon what the claimant did in making the submission. The third requirement of jurisdiction is a rejection by the Comptroller. The statute does not require that the rejection shall be in writing, nor that the rejection shall be accomplished by means of an auditing. If the Legislature had intended that rejection should be had as the result of an audit only it should have so stated. The Code of Civil Procedure and the Court of Claims Act contain no such provision. We have no right to read anything· into such statutory provision. If we attempt to interpret it then we are bound to give an interpretation which would help effect the benignant purposes the State seeks to accomplish in aiding its creditors having express contracts by a forum in which they can establish their claims. So interpreted no narrow or technical meaning can be set upon the word " rejected." It should be given a broad and liberal meaning. Is it enough to say that such meaning is that of the dictionary " to refuse to receive; to refuse to grant; as, to reject a prayer or request" (Webster's Dictionary), ignoring the exercise of reason and common sense? What took place between the claimant's representative and the Deputy Comptroller was such a rejection; he refused to receive the claim. The reasons of the Comptroller for rejection play no part in the establishment of the statutory jurisdictional fact. The act of submission as pointed out is the act of the claimant; the act of rejection that of the Comptroller. We think this construction of the Code of Civil Procedure and the Court of Claims Act was adopted by the Court of Appeals in the case of *O' Neil* v. *State of New York* (223 N. Y. 40). In that case an official of the State presented a claim for unpaid salary to the Comptroller for audit and the Comptroller rejected it upon the ground that the appropriation for the payment of such salary had been exhausted. If rejection can be made where there has

been no audit then the argument that a rejection can only be had as the result of an audit should fail. What other reason the Comptroller had for saying he had no jurisdiction than that there was no appropriation available I cannot fathom. The language of the Deputy Comptroller was that of a layman and may well be held to be the equivalent of saying there was no appropriation. Since any appropriation applicable to the payment of the rent reserved on the lease in suit, if it ever existed, has long since lapsed, the Comptroller would have been obliged to refuse as he did in *O' Neil* v. *State of New York (supra).* The law does not require the performance of the unnecessary, the supererogative or the vain. Undoubtedly this principle is the foundation upon which the Court of Appeals rested its decision in the *O' Neil* case. It furnished too the reason why the instant claim should not be required to be again submitted for audit to the Comptroller, because concededly there must exist a lack of funds with which to pay. The reaching of this conclusion is in accordance I think with the modern trend of judicial purpose and of public demand to wipe away from the body of our law all the vanities and excrescences whose offices are but to obstruct, confuse and delay. The present urge is for speedy justice. The Magna Charta is thus finding a renaissance in our courts which are furthering justice in accordance with the spirit of the sublime words: "To no one will we sell; to no one will we refuse or delay right or justice." What purpose but to delay will be served by another submission to the Comptroller.

The second question: Is the claim of the improvement corporation barred?

The contention of the State is that by the terms of section 264 of the Code of Civil Procedure it is barred. That statute (as amd. by Laws of 1920, chap. 482) reads in part as follows: "No claim other than for the appropriation of land shall be maintained against the State unless the claimant shall within six months after such claim shall have accrued, file in the office of the clerk of the Court of Claims and with the Attorney-General either a written claim or a written notice of intention to file a claim against the State, stating the time when, and the place where such claim arose and in detail the nature of the same, and of the items of damage alleged or claimed to have been sustained, which claim or notice shall be signed and verified by the claimant before an officer authorized to administer oaths." This provision is now in section 15 of the Court of Claims Act (as amd. by Laws of 1921, chap. 474).

The argument of the Attorney-General is based upon the language of the statute in the use of the word " accrued." Under the contract he claims that $1,375 became due on the first of each month;

**740** M. L. Improvement Corporation *v.* State of New York.

Third Department, March, 1923. [Vol. 204

that it was permissible after April 30, 1920, to file a claim with the Comptroller for the amount due each month and that as a consequence all of the claims were barred on June 23, 1921, except claims for the months of January and February, 1921. The point is that if by "accrued" is meant the time when the debt became payable as between individuals the Comptroller by a refusal to act could unless compelled by legal process by delay have defeated the claim. We have no quarrel with the argument as to what "accrued" means as between private persons regarding such contracts as the one under consideration. It means under a contract calling for payment of separate installments that sums so due accrue as of the date they become payable and that as to them the Statute of Limitations commences to run from the due date. (*Ga Nun* v. *Palmer,* 202 N. Y. 483.) Where the claim, however, is against the State the relationship is different from that existing between residents of the same State not under disability. The Civil Practice Act following the Code of Civil Procedure in cases involving statutes of limitations recognizes the disabilities of the resident against the non-resident debtor (*Hutchinson* v. *Ward,* 192 N. Y. 375); the disability of the infant, of the insane and of the prisoner (Civ. Prac. Act, § 60; Code Civ. Proc. § 396).

The claimant against the State suffers ordinarily too from disability. No person can sue the State except by its consent. If it suffers itself to be sued under certain conditions, they are jurisdictional and without compliance with them the suitor is remediless. (*Buckles* v. *State of New York,* 221 N. Y. 424; *Quayle* v. *State of New York,* 192 id. 47.)

The rule is that while the citizen has no court to which he can resort to have his claim heard no Statute of Limitations is effective. If a person cannot sue of what use is legislation barring his right to sue? The jurisdiction of the Court of Claims could not be secured by the claimant here until he had submitted his claim to the Comptroller for audit and it had been rejected. No existing law limits the time within which a claimant must submit his claim to the Comptroller.

We hold that there was no rejection of the claim until March 16, 1921, and that the Court of Claims acquired no jurisdiction until the statutory conditions had been complied with by the filing of the notice of intention required by the statutes on or about June 23, 1921, in the offices of the clerk of the Court of Claims and of the Attorney-General.

There was, therefore, no such accrual of the claim herein as would set the Statute of Limitations running until the rejection by the Comptroller.

· The rule has been generally stated by Judge Cooley in his work on Constitutional Limitations (7th ed. p. 523) as follows: " All statutes of limitations   *   *   *   must proceed on the idea that the party has full opportunity afforded him to try his rights in the courts.   A statute could not bar the existing rights of claimants without affording this opportunity; if it should attempt to do so, it would not be a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily whatever might be the purport of its provisions.   It is essential that such statutes allow a reasonable time after they take effect for the commencement of suits upon existing causes of action."

As particularly applied in this State it may be found in an opinion by Chief Judge ANDREWS, late of our Court of Appeals: " It is, we think, the reasonable and just construction of section 14, article 7 [of the Constitution of 1846, as amended in 1874; now section 6 of article 7 of the Constitution] that the limitation prescribed thereby only applies in a case where a tribunal has been constituted by the Legislature to hear and determine the claim in controversy, and that the limitation only commences to run from that time.   It is clear, that as between individuals, a statute of limitations attaches only from the time when an action to enforce the right asserted may be commenced."   (*Cayuga County* v. *State,* 153 N. Y. 279.)

I think the judgment dismissing the complaint should be reversed and a new trial granted, with costs to the appellant to abide the event.

Judgment affirmed and claim dismissed, without costs.